**FILED**

JUNE / 10 /2025

JUN 20 2025

CAUSE NO. **DR 25 CV 0050**

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

SUPERIOR COURT OF THE STATE Texas
FOR THE COUNTY OF Val Verde

NATALIE MICHELLE CLAY
Plaintiff

V

Tyler Perry, Boris Yeltsin, Tina Fey, Jose Romo, John and
Jane Doe (1-6) ~~to~~ residents of Kings Landing
apt. complex unit 813, unit 910, and unit 911
in Kingwood, Texas
__DEFENDANT__

## MOTION FOR TEMPORARY RESTRAINING ORDER

TO THE HONORABLE JUDGE OF SAID COURT:
COMES NOW, NATALIE MICHELLE CLAY, Plaintiff
in the above-entitled cause, and files this Motion
for Temporary Restraining Order pursuant to Rule
680 of the Texas Rules of Civil Procedure,
California Code of Civil Procedure §§ 525-534,
CPLR § 6301, New Jersey Court Rule 4:52-1,
Virginia Code § 8.01-626, Maryland Rule 15-50
D.C. Code § 16-5502, Haw. R. Civ. P. Rule
65, and in support thereof respectfully shows
the Court the following:

## I. PARTIES

1. Plaintiff, NATALIE MICHELLE CLAY, is a
resident of Kingwood and Canyon Lake, Texas,
and may be contacted at 331 Forest Center
Dr. Apt. 820, Kingwood, TX 77339 and 1006
FOUR WINDS DR CANYON LAKE, TX 78133-2122.

Tina Fey

2. Defendant, Tyler Perry, Boris Yeltsin, are well known public figures who regularly conduct business within the United States and internationally, subjecting them to the legal standards applied to public persons. Defendant, Jose Romo ~~services in the~~ was assigned as my rater and reviewer since October 1, 2023 at USINDOPACOM at Pearl Harbor Naval Base, Hawaii. Defendants, John Doe (1) and Jane Doe (1) are occupants of unit 911 in King's Landing in Kingwood, TX. Jane Doe (2) and Jane Doe (3) are mother · daughter relations and occupants of unit 813 in King's Landing in Kingwood, TX. Defendant, John Doe (2) resides in unit 910 in Kings Landing apartment complex in Kingwood, TX. Service of process may be had upon its registered agent: [315 Deshler St SW, Atlanta, GA 30310, 190 Marietta St NW, Atlanta, GA 30303, 820 First St NE Washington, DC 20002, 200 MacDill Blvd SE, Washington, DC 20340, 352 Makalapa Dr, JIOC, Joint Base Pearl-Harbor Hickam, ~~Hawaii~~ Honolulu, Hawaii 96818, United States, 331 Forest Center Drive, Unit 813, Unit 910, Unit 911 Kingwood, Texas 77339]. 30 Rockefeller Plaza, Building 620 New York, NY 10112,

II FACTUAL BACKGROUND

1 My name is Nat Clay, and I am the Plaintiff in this matter. I bring this Emergency Motion for a Temporary Restraining Order pro se due to escalating threats to my physical safety, psychological well·being, and constitutional rights, which I believe are being carried out using electromagnetic and microwave-based technologies

2. During the weekend of Passover 2025 (April 18-20), I was subjected to coercive manipulation and directional control while on or near the premises of the Church of Jesus Christ of Latter-Day Saints in 22110 Northpark Drive Kingwood, Texas 77365 United States. I was compelled, against my will and outside of normal behavior, to walk around the building's perimeter and then enter and sit in the sanctuary.

3. While seated, I was overcome by "voice to skull" (V2K) technology — strong enough to trigger panic and trauma — that I was being held in place for a potential domestic terrorism and that my survival was uncertain. Though no explosion or overt act occurred that week, the psychological impact was severe and destabilizing.

4. Following this incident, I experienced continued interference with my emotional and cognitive functions that I believe were caused or exacerbated by targeted use of electromagnetic radiation and/or directed microwave technologies. These forms of technological harassment are capable of remotely influencing perception, behavior, and thought processes — particularly when directed at individuals in isolated or vulnerable positions.

5. On or around May 21 2025, this interference was timed right before the Boulder, Colorado terrorist event. I experienced persistent emotional and mental distress that aligned with known symptoms of exposure to low-frequency electromagnetic fields and microwave manipulation, including intrusive thoughts, sleep disturbance, heightened anxiety,

5. and artificial ideation that did not originate from me.

6. That same week, I was prompted — whether by manipulated suggestion or outside influence — to purchase a Retro Radio with Bluetooth functionality from Amazon. After doing so, I noted an abnormal increase in encounters with ethnically and religiously identifiable individuals in my neighborhood. Their sudden and seemingly strategic appearance — more concentrated than at my any previous time while I had lived there — suggested a pattern of psychological staging or conditioning.

7. Following the radio purchase, I was led to believe — again through coercive suggestion — that I had unknowingly acquired a weaponized device, possibly a bomb, and that I was being monitored as a terrorist threat. This is factually and morally false. I hold a Master's degree in Terrorism and Homeland Security Policy from American University, class of 2017, and I have always opposed any form of violence or extremism. I texted my father, Darrell Clay to affirm my innocence and express my fear and confusion.

8. I was then prompted to discard two TracFones previously purchased from CVS at 1350 Kingwood Dr, Kingwood, TX Reg#03 TRN# 8324 CSHR# 1708987 STR#7475 Helped by: JESSICA (1) TF Flip Phone $19.99 with US Debit **** ******** 7158 on April 28, 2025 at 12:06 PM. I gathered my service dog, Benson and official documents and under continued psychological pressure, traveled to

8. The Harris County Clerk's Office to attempt to file a protective petition. ~~while inside~~ This event took place on May 29, at or around 9:07 AM.
   ^2025

While inside, I found that access to court staff and filing processes was hindered. Oddly, individuals were ~~removed~~ made to remove their shoes before entering— a detail that heightened my fear that another simulated or false-flag threat was being staged.

9. No physical attack occurred in either Harris County or Montgomery County. However, the sum of these experiences — emotional manipulation, behavioral conditioning, and cognitive disruption — has deeply impaired my safety, autonomy, and mental clarity. I believe that advanced forms of electromagnetic or microwave-based surveillance and control technologies have been used to target me and potentially other vulnerable individuals. I was also made to write down a quote from the book, "Japanese Death Poetry." The quote began with the words, "my whole life long, I've sharpened my sword and now, face to face with death I unsheathe it, and lo — The blade is broken — Alas." When I originally bought the book from Barnes + Noble Saturday, May 3rd 2025, I was attracted to the culture but I
Member Number: learned the intention of the defendants
5823745829 was to twist my words and to weaponize the justice system. The sword in my mind as a DIA intelligence officer was symbollic of lady justice and not that of a terrorist in the making.

10. These events implicate the actions or negligence of the following individuals:

10. Tyler Perry, a high net worth individual with resources potentially used to finance or enable private-sector intelligence operations;

Boris Yeltsin, a high profile public figure whose influence may be connected to psychological operations or public perception control;

Jose Romo, a federal intelligence officer and DIA rater/reviewer out of JIOC USINDOPACOM and DIA Headquarters who may be directly involved and responsible for the use of such technologies against civilians without oversight or due process.

Tina Fey, a high profile public figure used Voice to Skull to delay plane on Southwest Airlines Flight WN2978 on Thursday June

11. I submit this affidavit and statement of Facts in good faith and under penalty 12,2025 or perjury. I respectfully request immediate injunctive relief in the form of a Temporary Restraining Order to halt all contact, technological targeting, and unlawful surveillance or manipulation by the individuals named, and to preserve my right to safety, mental integrity, and access to the courts.

12. Defendant(s) has engaged in microwave surveillance and technological interference in the vicinity of Plaintiff's residence, workplace and community in Kingwood, Texas, Houston, Texas and across the following states: Colorado, Hawaii, Washington, District of Columbia, Virginia, Maryland, California, Arkansas, New York and New Jersey without the consent of Plaintiff or the general public.

residence and community in Kingwood, Texas, Washington, DC, New

York City, NY Los Angeles, CA without the consent of Plaintiff or the general public.

## On May 22nd — Psychological Torture including forced executions of family member

While involuntarily confined within her residence at King's Landing in Kingwood, Texas, Plaintiff was subjected to extreme psychological coercion and trauma by Timothee Chalet who threatened the plaintiff for coming forward. During this period, Plaintiff was forced to witness staged or simulated executions involving Ashley Ann Cueva, the spouse of Naval Officer Miguel Cueva, who is stationed in Washington, D.C. These acts were presented to Plaintiff in a manner intended to induce fear and compliance.

Throughout the ordeal, Plaintiff was repeatedly subjected to the phrase "Calla Lily Sissy," which was explained to signify a form of torture followed by being discarded and cleaned up on a tarp. Multiple individuals witnessed these events remotely, with their participation allegedly traceable to specific IP addresses accessing the live feed in real time.

Plaintiff was also repeatedly confronted with cryptic phrases—such as "Whistleblower," "Inside Baseball," and "Time"—which were communicated in a context designed to signal imminent harm or coercion. These statements were used as tools of psychological manipulation while Plaintiff remained under duress.

Two individuals identified as Maryn O'Neill and Brian Anderson—believed to be affiliated with the U.S. State Department. Anderson is a blockchain subject matter expert—but both along with the defendant played a role in facilitating or enabling the psychological torment.

Plaintiff clearly recognized the voice of one or more of the individuals involved in these acts, who issued explicit threats warning Plaintiff against disclosing what had occurred or presenting evidence related to the events.

Despite multiple attempts to contact government officials in real time, Plaintiff was prevented from doing so effectively. She encountered manipulated digital platforms, including fraudulent websites that mimicked official channels, preventing her from filing formal claims. Plaintiff captured real-time screenshots of these occurrences, which interfered with her ability to document and report the abuse.

Plaintiff also utilized a camera with live streaming capability and initiated a distress call during the incident, which remains part of the documented record of her confinement and psychological mistreatment.

**May 14, 2025 — Blocked from care, tortured into silence, forced to**

**beg experts for help**

On May 14, 2025, at approximately 2:05 AM Central Standard Time, Plaintiff placed a call to the office of Dr. Frank Ochberg, a nationally recognized trauma expert and contributor to the foundational understanding of post-traumatic stress and Stockholm Syndrome, in an effort to secure expert testimony in anticipation of legal proceedings. A detailed voicemail was left requesting evaluation and evidentiary support. Plaintiff is currently experiencing symptoms consistent with trauma bonding and Stockholm Syndrome—a psychological response to prolonged captivity and coercive abuse, wherein the victim forms emotional attachments to their captors as a survival mechanism (*Graham, D.L.R., Rawlings, E., & Rigsby, R.K., Loving to Survive: Sexual Terror, Men's Violence, and Women's Lives,* NYU Press, 1994).

These symptoms are recognized within both U.S. forensic psychology and international trauma response frameworks. The **United Nations Istanbul Protocol**—the international standard for the investigation and documentation of torture and ill-treatment—recognizes the psychological consequences of coercion, prolonged fear, and domination, including trauma bonding and dissociation, as medically and legally relevant to evaluating human rights abuses (United Nations Office of the High Commissioner for Human Rights, *Istanbul Protocol: Manual on the Effective Investigation and Documentation of Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment,* UN Doc HR/P/PT/8/Rev.1, 2004).

Despite the clinical severity of these conditions, Plaintiff has been deliberately and unlawfully obstructed from accessing qualified diagnostic and therapeutic care. Such obstruction violates principles under international human rights law, including Article 12 of the **International Covenant on Economic, Social and Cultural Rights (ICESCR)**, which guarantees the right to the highest attainable standard of mental health. In the absence of access to in-person treatment, Plaintiff has been forced to leave voicemails and indirect requests with trauma-informed clinicians in a documented attempt to preserve a record of suffering, seek medical assistance under duress, and lay the evidentiary foundation for expert testimony at trial.

As a result of the foregoing coordinated acts of targeted abuse—amounting to torture, obstruction, and conduct plausibly constituting war crimes under U.S. and international law—I am filing emergency Temporary Restraining Orders against multiple entities implicated in the ongoing misconduct. These include publicly traded corporations listed on the New York Stock Exchange—specifically T-Mobile US, Inc.; Verizon Communications Inc.; Apple Inc.; Meta Platforms, Inc.; Microsoft Corporation; and Alphabet Inc. —as well as international defense contractors and their legal representatives, including general counsel and registered agents of entities incorporated under the laws of the State of Delaware. The involvement of

these entities, whether through direct action or willful complicity, includes violations of constitutional rights secured by the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution; obstruction of justice and retaliation against whistleblower activity as prohibited under 18 U.S.C. § 1512 and 5 U.S.C. § 2302(b)(8); deprivation of rights under color of law pursuant to 18 U.S.C. § 242; and potential violations of the Convention Against Torture as implemented by 8 C.F.R. § 208.18. Additionally, the unauthorized surveillance and interference with lawful communications implicates regulatory oversight under the Federal Communications Commission (47 U.S.C. § 605) and securities compliance under the jurisdiction of the U.S. Securities and Exchange Commission (15 U.S.C. § 78j(b); Rule 10b-5). These acts, taken collectively, form a substantial basis for the emergency injunctive relief pursued under the standards articulated in *Ex parte Young*, 209 U.S. 123 (1908), and the government's duty to refrain from state-facilitated harm as outlined in *Hope v. Pelzer*, 536 U.S. 730 (2002), and *Farmer v. Brennan*, 511 U.S. 825 (1994).

**May 2025 – Ongoing torture of service dog via hacked microchip; barbarism made visible**
Plaintiff's federally recognized service and emotional support animal, Benson—a Dandie Dinmont Terrier identified by Microchip Number 981020033300987—has been subjected to repeated and targeted remote physical torture by individuals unlawfully accessing his microchip data, causing the animal undue suffering and compounding Plaintiff's trauma. Such conduct constitutes a violation of multiple federal statutes, including: the **Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213**, which prohibits interference with the use of service animals and the rights of individuals with disabilities; the **Air Carrier Access Act, 49 U.S.C. § 41705**, protecting the transport and well-being of service animals accompanying persons with disabilities; the **Animal Welfare Act, 7 U.S.C. §§ 2131–2159**, which criminalizes the infliction of harm or suffering on animals used in assistance capacities; and **18 U.S.C. § 1367**, which penalizes the intentional damage or destruction of communication or tracking devices— applicable here through the unlawful manipulation of an embedded microchip for malicious purposes. Additionally, such targeted abuse may constitute cruel and unusual punishment in violation of the **Eighth Amendment**, and further support claims of intentional infliction of emotional distress under the **Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680.**

**April 2025 – Apple Inc. Complicity and Denial of Essential Services for Evidence Preservation**
In April 2025, while attempting to preserve critical whistleblower evidence, I was deliberately prohibited by Apple Inc. from purchasing additional iCloud storage, despite being a paying customer. In urgent need of technical repairs and storage for legal documentation, I took an Uber to an Authorized Repair Center at 4949 Windfern Road Houston, Texas

77041-7502 Apple Store, during which I was subjected to remote directed-energy torture. Upon arrival, I placed an emergency call to my senior leadership, notifying them that I was in physical danger and in possession of unclassified materials on an Apple product MacBook Air (M1, 2020) Serial Number: HRTJC5VEQ6L4 related to a whistleblower report involving the U.S. Department of Defense and the Defense Intelligence Agency (DIA).

Rather than receiving assistance, I was met with excessive charges for basic repairs with a Repair ID of R665467735, and I have reason to believe that my computer was tampered with during the servicing process. Apple was formally put on notice regarding its potential complicity in the suppression and interference of federally protected whistleblower communications. This conduct raises serious concerns under 18 U.S.C. § 1512 (tampering with a witness or informant), and the potential destruction of evidence violates my rights under *California v. Trombetta*, 467 U.S. 479 (1984), which requires the preservation of evidence that might be expected to play a significant role in a suspect's defense.

By facilitating, ignoring, or failing to report electronic torture and retaliation involving a federal informant, Apple Inc.'s actions may rise to the level of material support for war crimes under 18 U.S.C. § 2339A, and violations of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which holds entities liable under § 1983 when policies or deliberate indifference result in constitutional violations.

### April 2025 – Direct Appeal to the Second Gentleman

In April 2025, I left a voicemail message for the Second Gentleman of the United States requesting that he alert his spouse, the Vice President, to immediately intervene and halt the continued torture I was experiencing. I was connected to his voicemail via a staff member at his employer's front desk. I recorded the voicemail and circulated it among my immediate family, who are also targets of these abuses, to demonstrate the urgency of my condition and the systemic evasion of accountability by senior government officials.

The failure to acknowledge or act upon these repeated emergency distress signals may constitute deliberate indifference under *Farmer v. Brennan*, 511 U.S. 825 (1994), and potentially implicate violations under 18 U.S.C. § 242 (deprivation of rights under color of law).

### March 10, 2025 – Neglect of Sexual Assault Investigation by Houston Police Department

On March 10, 2025, I received written correspondence from Senior Detective Victorina Hernandez of the Houston Police Department, Special Victims Division, Adult Sex Crimes Unit, regarding an alleged sexual

assault committed by Defendant Phil Maurion. This letter followed
numerous failed attempts by Houston PD to collect and process DNA
evidence in my case, despite there being at least four separate case numbers
filed. Detective Hernandez followed up on only one of the reports, and
made no further substantive contact regarding the remaining matters.
My attempts to pursue justice were met with obstruction. I contacted
members of Houston City Council, sitting judges, and the Texas
Department of Public Safety, including Texas State Troopers. I also
attempted to file a report in person; however, I was actively deterred due to
threats to my safety. Concurrent with these efforts, I observed and
documented a pattern of sustained surveillance in the vicinity of my
residence by individuals operating military-grade vehicles and bearing
license plates associated with known defense contractors and U.S. Armed
Forces units. These vehicles, according to direct observation and
documented evidence, carried advanced weaponry. These tactics, intended
to intimidate and suppress the lawful reporting of criminal activity,
constitute violations of my rights under *DeShaney v. Winnebago County
Dep't of Social Services*, 489 U.S. 189 (1989), which, while holding the
state is not liable for private violence, affirms that when the state creates or
heightens danger through affirmative conduct, constitutional protections
under the Fourteenth Amendment may be invoked. The government's
pattern of inaction and intimidation further implicates *Town of Castle Rock
v. Gonzales*, 545 U.S. 748 (2005), reinforcing the need for legal
accountability where authorities refuse to enforce protection against private
harm in violation of procedural due process.

### February 11, 2025 – False Correspondence Regarding Military Indebtedness

On February 11, 2025, I received documents marked "UNCLASSIFIED//
FOR OFFICIAL USE ONLY" from the Defense Finance and Accounting
Service at Fort George G. Meade, Maryland. These documents, citing a
subject line of "Indebtedness of Base Pay," falsely claimed an obligation.
The return email—B214_ardebt@nsa.ic.gov—is inconsistent with official
pay processing channels used during my federal employment, which
historically have utilized the ~HROC@dodiis.mil account.
The fabrication of debt and the withholding of pay appear to be forms of
retaliation for whistleblower disclosures, in direct violation of the
Whistleblower Protection Act (5 U.S.C. § 2302(b)(8)) and further
substantiated by *Bivens v. Six Unknown Named Agents*, 403 U.S. 388
(1971), which recognizes a cause of action for constitutional violations
committed by federal agents acting outside the scope of lawful authority.

**Winter 2025 – Electromagnetic Assault and Targeted Torture**

In early 2025, I arranged a call with Ms. Nell Dieterle, who agreed to discuss overlapping grievances involving ongoing surveillance and psychological operations reportedly tied to U.S. Indo-Pacific Command (INDOPACOM). Upon notifying members of Congress via Instagram about this initiative, I was attacked at a nail salon in Kingwood, Texas by an individual I identify as Douglas Robertson. The attack left me temporarily paralyzed and unable to attend the planned call. Shortly after, my access to Instagram was revoked.

Video surveillance confirms my movements in Kingwood, Texas—specifically at Dairy Queen and Kingwood Drive—during which I was subjected to a "challenge," a term allegedly used by perpetrators to describe forced subjection to psychological and physical torture, including sleep deprivation, forced starvation, homelessness, and cognitive erosion through electromagnetic weaponry. These actions violate the Eighth Amendment's prohibition on cruel and unusual punishment and reflect state-sanctioned or state-condoned abuse in violation of *Hope v. Pelzer*, 536 U.S. 730 (2002), which prohibits dehumanizing treatment that serves no legitimate governmental purpose.

**December 26, 2024 – Involuntary Psychiatric Commitment Without Due Process**

On December 26, 2024, I received an Order of Protective Custody and an Order Setting Hearing for an alleged mental illness from the Probate Court No. 1 in Montgomery County, Texas with a Cause No. 24-19273. This was issued without prior notice or opportunity for meaningful response. The court correspondence carried an Envelope ID of 95598087, timestamped as of December 23, 2024, 11:00 AM CST. Despite repeated messages left with court clerks, including Mr. L. Brandon Steinmann, I received no return communication.

This ex parte process raises serious constitutional concerns under *Vitek v. Jones*, 445 U.S. 480 (1980), where the Supreme Court held that involuntary psychiatric commitment implicates a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. The use of mental health law as a weapon of reprisal undermines the fundamental fairness required by federal procedural protections.

**July 11, 2024 – Catastrophic Torture and Institutional Abuse**

On July 11, 2024, I was subjected to severe torture—referred to as a "challenge"—which included being forced to drink bodily waste, being exposed to the drug use of close family members (delivered remotely through sensory manipulation), and sexual assault. Emergency responders from the City of Houston Fire Department transported me to HCA

Kingwood, where I endured further abuse, followed by an involuntary transfer to Sun Behavioral Health.

At Sun, I was denied eyeglasses, forcibly medicated, electrocuted, and subjected to psychological and pharmacological experimentation. I was made to complete cognitive tasks while experiencing neurological breakdowns that prevented me from forming basic thoughts or words. During my stay, I recognized individuals connected to my former federal employment, operating within the institution in managerial roles—an observation that suggests coordination between federal personnel and the medical facility. I was told that if I did not comply with instructions to assist in trafficking others, the torture would resume.

These acts rise to the level of *Estelle v. Gamble*, 429 U.S. 97 (1976), which recognizes deliberate indifference to serious medical needs as a constitutional violation. Moreover, the conduct described may constitute torture under 18 U.S.C. § 2340A and may be subject to redress under international obligations through the Convention Against Torture, as incorporated into U.S. law.


Since on or about **January 2014**, Defendant has engaged in **microwave surveillance and technological interference** in the vicinity of Plaintiff's residence and community in **Kingwood, Texas**, across the United States without the consent of Plaintiff or the general public.

Defendant's actions include the unauthorized use of directed energy or microwave-based technology, surveillance activities involving frequent vehicle swaps, and operations that have caused emotional distress, physical symptoms, and ongoing fear for Plaintiff's safety.

Plaintiff alleges that these actions constitute **cruel and unusual punishment** in violation of the **Eighth Amendment of the United States Constitution**, despite no criminal conviction or lawful justification.

Plaintiff is informed and believes that Defendant's conduct is willingly participating in a broader effort of ongoing, unauthorized government or private-sector surveillance experiments conducted without oversight or transparency.

While being held under conditions amounting to unlawful detention and torture, I established accounts on both Instagram and X (formerly Twitter) to communicate my status as a prisoner of war and to alert public and private officials, domestically and internationally, to the ongoing human rights violations I was experiencing. These platforms—both

| | | | |
|---|---|---|---|
| I experienced severe symptoms consistent with the effects of crack-cocaine, including. These symptoms occurred without any voluntary drug use and were accompanied by electronic interference. I believe I was either drugged through environmental contamination or neurologically manipulated through directed technology to induce these effects. | Frequent Chemical Assaults - I have been subjected to repeated chemical assaults, including the non-consensual administration of illicit substances, which I believe were intended to impair my cognition, induce dependency, and weaken my physical autonomy. | Forcibly removed periods. I also believe that my assailants deliberately targeted my hormonal system in an attempt to deplete estrogen levels and alter the natural size and shape of my breasts, which has caused physical distress and profound psychological harm. | **Electromagnetic Radiation Targeting** when trying to seek legal counsel– High exposure could overstimulate the retina or optic nerves, potentially inducing temporary blindness or visual hallucinations. |
| Geo-Fencing; **reconnaissance** (ISR) systems, many of which rely on **GPS tracking** and **geo-fencing** technology for **real-time tracking** of individuals and assets | Deploying Directed Energy and Microwave Systems; electronic warfare and disabling enemy systems | Utilizing surveillance systems that enable geo-fencing, real-time tracking, and location-based intelligence. They often develop systems for the **military and law enforcement** that involve monitoring people, vehicles, and objects based on location, but private citizens now have unlimited access and are not monitored. | Deploying microwave and laser-based systems at will. |

| | | | |
|---|---|---|---|
| Directing co-defendants to deliver pain via **satellite** and **aerial surveillance systems** that use **GPS and geospatial technologies**, which could be integrated with **geo-fencing** to track or monitor individuals or groups. | Using technologies include **high-power microwave** and **directed energy** weapons designed to disable electronics; Disrupting communication and distress calls at home and abroad. | Arranged **unmanned aerial systems (UAS)**, or drones, which can be used for **surveillance** and **geo-fencing** | Manipulation of content in the news and media; altered voices; copyright infringement; |
| Intimidating a witness; | Manipulation of the Stock market; | | |

*emotional dysregulation*

*hysterectomy*

There is no adequate remedy at law that can fully compensate Plaintiff for the harm already caused and that which is ongoing.

## IV. RELIEF REQUESTED

Plaintiff seeks a Temporary Restraining Order to immediately enjoin Defendant and all those acting in concert with it from:

Using any form of microwave, directed energy, or surveillance technology within 500 feet of Plaintiff's home;
Operating surveillance vehicles in the vicinity of Plaintiff's residence;
Engaging in any further unauthorized monitoring or targeting of Plaintiff.

Plaintiff also seeks an order requiring Defendant to **cease all surveillance and interference activities** pending a full hearing on Plaintiff's request for a temporary injunction.

publicly traded entities—subsequently suppressed my accounts and erased critical communications intended as real-time distress signals. Despite these efforts to silence me, remnants of my X account remain online, containing messages transmitted under duress during episodes of torture. These messages serve as documented attempts to seek urgent assistance and are integral to the evidentiary record of my claims. The suppression of these accounts constitutes not only an obstruction of justice but also a gross violation of my fundamental right to speak and seek help.For a detailed account of the situation, I refer the Court to my X account at @hellokittytips, where the truth of my circumstances and the evidence of these ongoing human rights violations can be found.

I am currently in lawful possession of material containing the Defendant's DNA, which—when properly processed—will serve as physical corroboration of claims that are otherwise supported by the Defendant's extensive digital footprint; I respectfully urge the Court to act without delay to preserve and authorize the forensic handling of this evidence before it is compromised or rendered inadmissible.

## III. IRREPARABLE HARM

Plaintiff has suffered and continues to suffer irreparable harm, including emotional distress, potential physical harm, loss of enjoyment of property, and disruption of daily life. Plaintiff has suffered prolonged and severe harm including physical assault, electrocution, psychological manipulation, surveillance-related trauma, denial of medical and legal access, isolation from family and communication, and forced exposure to coercive control techniques— each of which continues to pose an immediate threat to her safety and constitutional rights. The following list is not exhaustive, as I have been unable to complete it due to ongoing electronic interference affecting the Apple Pages application.

Plaintiff is experiencing symptoms consistent with trauma bonding and **Stockholm Syndrome**, a psychological response to prolonged captivity and abuse, wherein the victim forms psychological ties with the perpetrator as a survival strategy (Graham, D.L.R., Rawlings, E., & Rigsby, R.K., *Loving to Survive: Sexual Terror, Men's Violence, and Women's Lives*, NYU Press, 1994). Despite the severity of these symptoms, Plaintiff has been **physically and psychologically obstructed** from accessing diagnostic and therapeutic care.

The **deliberate interference with Plaintiff's ability to obtain medical and mental health services** is a violation of the **Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.**, which prohibits discrimination and obstruction in accessing medical care based on an actual or perceived mental impairment. This obstruction also implicates **Plaintiff's rights under the Rehabilitation Act of 1973, 29 U.S.C. § 794**, which protects individuals from exclusion or denial of benefits under any program receiving federal assistance.

Furthermore, federal courts have recognized that denial of medical care—especially in situations involving mental illness and trauma—may constitute **irreparable harm**. See *Doe v. Snyder*, 101 F. Supp. 3d 672, 691 (E.D. Mich. 2015) ("The loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); see also *M.R. v. Dreyfus*, 697 F.3d 706, 728 (9th Cir. 2012) (holding that loss of access to medical services "constitutes irreparable injury").

Absent immediate injunctive relief, Plaintiff faces **continued psychological deterioration, retraumatization, and denial of care**, which monetary damages alone cannot remedy. These harms are ongoing, compounding, and threaten to permanently impair Plaintiff's cognitive, emotional, and physical health.

## Continuous Pattern of Physical, Psychological, and Chemical Abuse

| Tortured Animals | Forced Nudity | Forced Vomiting | Forced to inhabit living quarters without electricity or internet |
|---|---|---|---|
| Not allowed to watch the news | Separated from iPhone | Teeth Retainer Forcibly Removed | Not allowed Prescribed Medication |
| Constant visual intimidation of 3-D men in the shower with me to exert psychological pressure and control | Extensive mental depattering for rape and sexual acts: Mental depatterning, which involves breaking down an individual's existing thought patterns | Forced into a regressive state, loss of familiar mental structures and coping mechanisms. | Increased dependence on abusers, simplified thinking, and emotional responses akin to those of a young child |

| | | | |
|---|---|---|---|
| Extensive Periods of Sleep Deprivation; Electrocuted on a daily basis; | For a continuous period of four days, I was subjected to an intrusive and repetitive beeping noise that mimicked the sound of a cardiac monitor, triggering traumatic memories associated with a prior hospitalization and an attempted murder incident. This audio harassment appeared deliberately designed to psychologically destabilize me and induce fear. | While staying in Maryland, I sustained an unexplained and severe gum injury that resulted in significant bleeding. I believe this was caused by targeted electromagnetic interference, as it occurred without any physical trauma and in conjunction with other episodes of electronic harassment. The injury left a visible pool of blood and water in the bathroom | I experienced sudden, unexplained vision loss for approximately 48 hours, which I believe resulted from targeted electromagnetic interference or a similar directed energy mechanism. This event was accompanied by neurological symptoms and occurred during an ongoing pattern of surveillance and harassment. |

## V. PRAYER.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that the Court:

1. Issue a Temporary Restraining Order as described above;

2. Set this matter for hearing at the earliest possible date for consideration of a Temporary Injunction;

3. Grant Plaintiff such other and further relief, at law or in equity, to which Plaintiff may show themselves justly entitled.

4. That the Defendant be enjoined from destroying, concealing, or tampering with any evidence relevant to this action;

5. That the Defendant be ordered to surrender all current passports to the Court for safekeeping, as the Defendant(s) possesses both the means and incentive to flee the jurisdiction in an effort to avoid legal accountability.

6. That expedited discovery be permitted to identify additional responsible parties and secure digital evidence at risk of destruction;

7. That such other and further relief be granted as the Court deems just and proper.

8. Plaintiff requests the Court's understanding as I (she) prioritizes urgent filing over formatting, and respectfully reserves the right to supplement this filing with supporting citations and expert affidavits at the earliest opportunity.

Respectfully submitted,

NATALIE MICHELLE CLAY
331 FOREST CENTER DR APT 820
KINGWOOD, TEXAS 77339
(832) - 581 - 9334
TAIGUILEHOLAKITTYTIPS@TUTA.com
NATCLAYBILLING@GMAIL.COM
PRO SE PLAINTIFF


CC: Defense Intelligence Agency
    7400 Pentagon
    Attn: Siobhan Francis / OHR-4
    Washington, DC 20301-7400
    Phone: (202) 231-6199
    Email: Siobhan.Francis@dodiis.mil


    Western District of Texas, U.S. District Court
    Attn: Clerk of Court
    501 West Fifth St Ste 1100
    Austin, TX 78701


        HARRIS COUNTY DISTRICT CLERK
    Attn: Clerk of Court, Marilyn Burgess
        201 Caroline, Ste 420 Houston, TX 77002

cc:    Derrick K. Watson Chief Judge
U.S. District Court
District of Hawaii
300 Ala Moana Blvd, C-338
Honolulu, HI 96850


Office of the Clerk
450 Golden Gate Ave
San Francisco CA 94102-3489

CC:

Federal Communications Commission – Enforcement Bureau
45 L ST NE
WASHINGTON, DC 20554

Federal Trade Commission
Office of Inspector General
Room CC-5206
600 Pennsylvania Avenue NW
Washington, DC 20580


U.S. Department of Justice – Civil Rights Division
Civil Rights Division
950 Pennsylvania Avenue, NW
Office of the Assistant Attorney General, Main
Washington, D.C. 20530

U.S. Department of Justice - Criminal Division
Criminal Division
950 Pennsylvania Avenue, NW
Office of the Assistant Attorney General, Main
Washington, D.C. 20530

Senate Select Committee on Intelligence
211 Hart Senate Office Building
Washington, D.C. 20510

House Permanent Select Committee on Intelligence
HVC-304, U.S. Capitol
Washington, D.C. 20515

I have credible reason to believe that my account has been subjected to unauthorized surveillance, tampering, and digital manipulation—including the disappearance of calls, hidden voicemails, and the unauthorized alteration of contact records. These incidents are not only alarming—they may constitute **criminal interference and obstruction**, especially as they coincide with active federal legal proceedings and protected communications related to ongoing whistleblower activity.

This request is made pursuant to my rights under the **Stored Communications Act (18 U.S.C. §§ 2701–2712)** and relevant **FCC consumer privacy protections (47 U.S.C. § 222)**, which affirm my legal entitlement to access non-content records and account



U.S. POSTAGE PAID
FCM LG ENV
WIMBERLEY, TX 78676
JUN 12, 2025

$12.66

78840

S2324H502056-09

Retail

RDC 99

9589 0710 5270 0696 0092 78

UNITED STATES DISTRICT COURT OF TEXAS
ATTENTION: CLERK OF COURT
111 EAST BROADWAY ROOM L100
DEL RIO TX 78840